Good morning, Your Honors. My name is Steve Materne, and I represent Cynthia Mason, who is the plaintiff in the case below and the appellant here. This is a case involving a police officer who we allege assaulted our client in an effort to prevent her from observing a police stop from a point on her own property next to her garage. Now, there are two causes of action at issue here, our seventh and eighth causes of action that were both dismissed by Judge Reel. Our seventh cause of action, I contend it adequately alleged a, I explained in my brief why I believe it adequately alleges a Fourth Amendment claim. It did not adequately allege a First Amendment claim, and that was pointed out in the 12th. The actual, when you read us the allegation, with regard to the Fourth Amendment claim, it was extremely general. It seems to me to be the one that's in the operative complaint, as opposed to what it is that you're now operating, as opposed to what it is that you propose to omit. Yes. The one that was in the now operative complaint seems to me not to comply with Iqbal's standards. Do you agree with that? As opposed to the question of whether you should have been allowed to omit. You made specific amendment proposals, I understand. You would mean to say X. Yeah. I made specific amendment proposals. If that's the Court's viewpoint, I would concede and argue that my amendment, I think, claims that, cures that. I'm not sure that the very detailed pleading standards really need to apply here, because basically we said that he assaulted my client and pulled her arms behind her back, and that he had no grounds for doing so, that he had no necessity. But I believe that, of course, in our amendment, we explained that much better. Where she was or what she was or what was going on or anything. And your new version says a little. It doesn't say a lot, but it says a little. Yes, Your Honor. And what did Judge Reel say about that? He just said, I don't want to hear it. I don't know that in his speech in the Court he even addressed the seventh cause of action. I believe he was talking about the eighth cause of action. Or perhaps he had a better point about the lack of specific facts. And we also don't have that transcript here. He begins his speaking about the eighth cause of action, and then when he's done speaking about the eighth cause of action, he says, and as to all the rest of the causes of action, they don't state specific facts. He says that very generally, and then states that he's going to dismiss the entire complaint. Sorry. Which complaint are you talking about now? This was our first amended complaint. Okay. And the eighth cause of action in the First Amendment complaint. That is the Monell cause of action against the municipality. Okay. Thank you. And then he also went into discussing the fifth cause of action, which was a State law cause of action that he said he was going to dismiss, then evidently changed his mind and did not dismiss. He remanded that. But I did How did the dismiss brought with regard to the whole complaint or not? He began by saying that The motion is dismissed. I'm not asking what he said. You say in this transcript that the 12b-6 was not addressed, only addressed certain of the claims. Yes. Is that right? That's right. The 12b-6 was addressed to the seventh, eighth and fifth causes of action. But he dismissed the whole thing. But you're not really complaining about that. Because the rest of it, I guess, were supplemental claims. Yeah. There were supplemental claims, including the fifth cause of action. He began by My point of bringing up that point was it just seemed to me to indicate that he did not, was not familiar with the complaint, was not familiar with the 12b-6 motion. He, of course, would not discuss anything. And he began by saying that he was going to dismiss all causes of action. And when I finally managed to get two words in edgewise and remind him that the 12b-6 was not addressed to all causes of action, that's when he changed and said, well, then I'm, I'm, I am dismissing those. And then when I tried to ask him which, what he meant by those, which causes of action he was dismissing, he simply said, I've ruled, I believe, don't play games with me. And that was, that was the end of the discussion. So I had that just a second ago, and now I'm losing it in the transcript. Is it on page ER-10, 11, or did I just see it? Verrilli, I have that right here. I can get you that. That is starting on 6, page 6, line 16, to page 8, line 16, which is the excerpts of record page 11 through 13. Now, did you ever formally make a motion to, a written motion to amend, or it was just when you stood up in court and said, I can amend it? In my opposition, I requested leave to amend the seventh and fifth causes of action. And with proposed language? The proposed language was as to the seventh cause of action. But it was in the document, written in the document.  I requested leave to amend the eighth cause of action at the hearing. But I did not have a chance to discuss that with him. Counsel, this comment, he's on page 12. Forgive me. I'm on page 12 where the judge made the remark that you just quoted about playing games. Okay. Is that 12, page 12 of the excerpts of record, Your Honor? Right. Okay. Okay. I'm sorry if I gave you a wrong page number. I must have written it down. And I'm not sure you did, by the way. But just so we're on the same page literally, figuratively, at line 12 there, it says in court, this is the second time that there have been any allegations of this is a First Amendment complaint. Yes, Your Honor. Well, remember, I started out in State court. And my original complaint was really, it was geared towards the requirements of State court. And this, I believe that I would have had adequate allegations in State court. Of course, we've got new pleading standards in Federal court that some of, we're all trying to get used to. Some of us are a little slower at it, perhaps, than others. And so this was my first attempt at pleading to the Federal standards. And, Your Honor, I would have to concede that perhaps my cause of action and perhaps my seventh cause of action were inartfully drawn for that purpose. What about the eighth cause of action? You don't have proposed language as to that. No, Your Honor. And do we have any reason to think you're going to be able to allege us inadequately specific? Yes, Your Honor. Where I want to go is the failure to train the police officers in any way as to the rights of bystanders to observe police activity, which is what I think is really what this case is all about. This is all about the rights of bystanders to observe police activity. She was lawfully on her property. She, what the police officer told her to do, he didn't say stand back a certain distance. He said go inside your house. He was trying to prevent any observation of what he was doing. So if you, if there are reasonable time, place and manner restrictions as to the public's right to observe police activity, what this police officer was doing was ordering her to do something far beyond a simple reasonable time, place, manner restriction. He was ordering her to cease, to go inside, to stop observing. There was an allegation there that she was yelling at the police. Interfering. Interfering. Well, that's going to have to be an issue for the trial, Your Honor. I believe that that was raised in my opponent's brief. All we have is what he said in his brief. There's nothing in there. Because there's no record evidence at all. They have their story, which they've told us in their briefs, but that's it. That's correct, Your Honor. That's the only place that those allegations occur. And that's, of course, something I will have to deal with in this case and trial. Did you talk about the 14th Amendment claim in your opening brief on this appeal? No, Your Honor. I did not. I did not address the 14th Amendment claim. Any reason for that? Well, I suppose the 14th Amendment claim would be based on a substantive due process argument. But I think my main claims here are really the Fourth and First Amendment claims. And my ‑‑ I think that's really the substance of our claims. And getting back to the reason, if you don't mind, I probably haven't answered your question very well, and I apologize. But getting back to the reasons that the judge actually denied leave to amend, the only reason he articulated at any time was that he believed I was acting in bad faith by asking for leave to amend. He didn't make a finding that amendment would be futile. He didn't make a finding that amendment would be in any way prejudicial to the other side. His finding is purely orally. This is not written anywhere. The only thing that could conceivably in the record constitute a finding of any kind was his statement that my request for leave to amend was made in bad faith. And I would submit that there is absolutely nothing in the record to support that. Well, once you're beyond your time limit. I'm sorry, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is David Torres Segrist, and I represent Appellee's Defendants, City of Pomona, Chief Dave Keedle, and Officer Christopher Lewis. Your Honor, Judge Berson, you've touched upon a good point. This appeal comes down to one word, context. I'm sorry? This appeal comes down to one word, context. There is no context, no allegations that specifically. Yes, in the First Amendment complaint. So he asked for leave to amend, and he said specifically what would you regard his amended complaint, his proposed amended complaint as Iqbal compliant? Your Honor, I would say that with respect to the actual facts. Well, that's different. I mean, that's not what you do on complaints. I mean, the way you're litigating this is extremely bizarre, i.e., to file a brief giving your side of the story. Fine, you'll have plenty of chance to tell your side of the story. That's not the issue. The issue is whether he should have a chance to litigate it, to have your side of the story and their side of the story and litigate it. And he's been now deprived of the ability to litigate it, and I'm asking you whether the proposed language would survive a motion to dismiss, whatever may be true as to what happened. Your Honor, with respect to the proposed language, no. I don't believe it would survive a motion to dismiss. In any event, did the – I'll hear you out in a minute as to why. But did Judge Reel give him a chance? Rule on that? No. He never looked at it. No, Your Honor. Procedurally, although originally this case was filed in State court, it was removed and defendants, appellees, had filed a motion to dismiss the original complaint. That is when – And ordinarily, our ordinary rule is that there is an opportunity to amend for a dismissal, right? Correct, Your Honor. And the district court has to give an opportunity to amend. Did he do that? Yes, Your Honor. That's why we're at a first amended complaint. He had that – she had that opportunity, an appellant. There was an earlier dismissal with leave to amend? No, Your Honor. No, there wasn't one. It was a voluntary amendment. Right. So this is the first time there's been a dismissal and it was without leave to amend, even though he said, this is what I would amend. Yes, Your Honor. Okay. With respect to the pleading standard, however, the one articulated in the AE decision, which took prior decisions like Iqbal and Tombley and consolidated those, causing a new heightened pleading standard requiring specific facts, Your Honor, there's no specific facts with respect to context here. This isn't a simple traffic stop. This isn't a simple citizen just viewing a traffic stop. This case has made its way through the State court. With respect to his proposed language, there was a murder outside my house, and if everything else is the same, that would be okay? 215 feet away, Your Honor, less than two hours before, with the officers effectuating trying to clear a vehicle that matched to a T, the description of the shooting vehicle. Right. Okay. Your Honor, in January. But she's standing on her – she said – I mean, I don't know what really happened. Maybe you say she went up and bothered them and, you know, you'll have a lawsuit about that, but her story in the current version is I was standing on my own property and watching them and not bothering anybody and nobody was – and this is what happened. That's what she says. She could be lying. It could not be true, but that's what she says. Yes, Your Honor, but how – Okay. You know, there is a – she does give a statement of facts, paragraph 12. December 1, 2010, at about 9.30 p.m., a plaintiff while legally on her property, located at, she gives the address, the City of Pomona, approached by Officer Lewis who, without provocation, warrant, necessity or justification, placed plaintiff in the cuffing position by violently grabbing both of her arms, subsequently shoving her forward, causing a rotator cuff tear, the plaintiff's right shoulder, and injuries to her lower back. Defendant Officer Lewis was not making an arrest, preventing escape, nor overcoming resistance. Your Honor, respectfully, with respect to that allegation, it is still vague as to whom, the appellant or as to the individuals in the vehicle that are being cleared. And that is the issue. I'm sorry. What is asked to whom? I don't understand what you're saying. That's an understated claim. What is asked to whom? Whether the officer is in the process of effectuating arrest, the use of force, the support for this. Well, it's obvious what she means. If you want to make some specific objections, I'm sure he'll fix them. I mean, when he says he was not making an arrest, preventing escape, or overcoming resistance, he means as to her. If you want him to write in as to her, I assume he would do that. Yes, Your Honor. However, that still leaves the officer could legally have or lawfully have those components as to the individuals in the vehicle. Again, it goes back, Your Honors, and that's one of the issues. But that's a – that's still a different issue. If you have a problem with the substance not stating a fourth, an adequate cause of action, then you can file a motion to dismiss on the merits saying if everything happened the way she says, she loses. You can do that. But that's not what happened here. I understand, Your Honor. One of the issues with this appeal is that this case is, for the last year and a half, has made its way through the superior court system. And now we do know the facts. And one of the issues is, is that it is akin, should this case be remanded, is akin to telling an 18-year-old who's matured over the years to go back and be an infant again. We now know what actually happened. We've had the depositions of plaintiff as to be. So is it a really easy motion to dismiss or motion for summary judgment? Your Honor, maybe back up here. I mean, honestly, I mean, Judge Reel should have slowed down a little bit and listened to what was being said and allowed the amendment and you wouldn't be here. It's not your fault, perhaps, but that's what happened. And if you, perhaps if you had helped a little bit and gotten this thing back on the road, we wouldn't be here a year and a half later. Your Honor, we have continued litigating this matter. One of the issues of prejudice to my client should, or my clients, should this matter be reversed and remanded is that we have a trial date now in March of 2014 in State Court. We will be litigating this matter in two separate court systems. And there may be a potential for inconsistencies between the two. Presumably, if all of this hadn't happened, you would have litigated the viability of this claim the way it is. Judge Reel would not have dismissed the supplemental claims, but would at least find out whether this one survives. If it survived, the supplemental claims would have stayed in State court. In Federal court, right? And you wouldn't have this problem. But I don't know how we can reproduce the wheel now. I understand, Your Honor. If I may touch upon the eighth claim, the Monell aspect of it. There is nothing by way of proposed language that would correct the eighth claim with respect to Monell or the subset of Monell, the City of Canton, failure to train. There are no facts specifically alleged vis-à-vis any of the officers involved that would support this subset of Monell, City of Canton. And not only that, missing is the requisite causal nexus between any deliberate indifference and the alleged constitutional violations in this matter. Your Honors, with respect to remand, should this matter be remanded, we would respectfully submit that reassignment is not necessary. Pursuant to the standards articulated by the Ninth Circuit in Mustang Marketing Inc. and Montrose Chemical Corp., there are no extraordinary circumstances here warranting the drastic remedy of reassignment. You just essentially said that it created a major mess, at least. It may have, Your Honor. However, with respect to this district court judge, I do not believe at least do not believe that there are extraordinary circumstances here warranting reassignment. Unless the panel has any further questions, we'll submit. Thank you. Thank you. I will take this matter under submission.
judges: Pregerson, Berzon, Christen